{¶ 80} I concur in the judgment but write separately to clearly state the critical reason to reverse the trial court's decision granting a new trial. I disagree that the main focus of our review is Johnson's failure to comply with the 120-day requirement for filing his motion for a new trial. Rather, I would focus our review on the legal criteria that must be met before granting a new trial as enunciated in State v. Petro
(1947), 148 Ohio St. 505. The State's challenge to the granting of the motion constitutes a legal challenge to the competency of the evidence to satisfy the test set forth in Petro. Whether the alleged "new evidence" meets the six criteria of State v. Petro, or whether it is merely cumulative or serves only to impeach or contradict former evidence is reviewable as a question of law. State v. Larkin (1996),111 Ohio App.3d 516, 523.
 {¶ 81} In State v. Petro, supra, the Ohio Supreme Court held that:
"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."
 {¶ 82} Johnson relied on Harris's recantation of her trial testimony as the basis for seeking a new trial. He claimed that her admission that she did not see his face constituted new evidence, invalidating her photo array identification and warranting a new trial. However, the record reveals that such evidence does not satisfy the last element of thePetro test because it merely serves to impeach or contradict former evidence.
 {¶ 83} Moreover, Harris's trial testimony disclosed the vulnerability of her identification. On cross-examination, she admitted that she told police that she did not clearly see the shooter's face. The trial transcript reveals the following colloquy between defense counsel and Harris on cross-examination:
"Q. And you did say in your statement that I showed you, that you could not identify the shooter, because you didn't see his face?
"A. I said, I did not see his face clearly?
"Q. Well, let me read it to you again.
• * *
"Q. You were asked on the 10th of February, the first statement that you made. A question was asked, `could you identify the male who was firing the gun?' And your answer was, `No, I didn't see his face that clear.'
"A. Yes."
 {¶ 84} Moreover, the transcript further reveals that Harris admitted that she selected Johnson's photo from the photo array based on his clothing. When the prosecutor asked her why she chose Johnson's photo, she stated:
"A. Because that was the person I seen and he had on the exact same coat and clothing that I had seen."
 {¶ 85} Furthermore, to the extent that the trial court relied on the prejudicial nature of the photo array as grounds for granting the motion, this court has already upheld the photo array and the reliability of Harris' identification on direct appeal. See State v. Johnson (Jan. 16, 1997), Cuyahoga App. No. 70234.
 {¶ 86} Therefore, I would find that Johnson failed to satisfy thePetro test because Harris's affidavit merely attempts to impeach or contradict her trial testimony. And because her testimony was challenged at trial, I would find that the affidavit does not present any "new evidence" that was not already reviewed at trial and by direct appeal.